UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

MICHAEL ALAN NUYEN,

Defendant.
_______________________________/

No. 1:19-cr-57

Hon. ROBERT J. JONKER
Chief United States District Judge

# GOVERNMENT'S SENTENCING MEMORANDUM

Michael Nuyen was convicted by a jury of various methamphetamine and firearms offenses; he is scheduled to be sentenced on February 27, 2020. For the reasons discussed below, the government asserts that the amounts of methamphetamine attributable to Mr. Nuyen as relevant conduct are higher than those alleged in the presentence report. The government also addresses Mr. Nuyen's request for a U.S.S.G. § 5K1.1 sentencing reduction and why the Court cannot grant such a reduction.

## Factual Background

### 1. Arrest and Statements of Charles Vogel

In December 2018, Charles Vogel was arrested in Kalamazoo in possession of firearms; he was ultimately indicted by a grand jury in this district. (R.81: PSR, PageID.402, ¶ 14.) While he was being transported from Kalamazoo to the custody of the U.S. Marshals Service, Mr. Vogel made several statements to federal law enforcement officers after waiving his *Miranda* rights. (*See* Sentencing Exhibit 1,

Attached.) Mr. Vogel told agents that Mr. Nuyen sold him and his associates crystal methamphetamine between September 2017 and December 2018. (*Id.*) Mr. Vogel said he conservatively estimated that Mr. Nuyen supplied him and his associates with 3 ounces of crystal meth a week. (*Id.*) After deducting a several month period when Mr. Vogel was incarcerated, the total amount of crystal methamphetamine that Mr. Nuyen would have provided Mr. Vogel and his associates is about 72 ounces, or over 2 kilograms. (*Id.*)

**2. Arrest of Michael Nuyen**

In February 2019, Michael Nuyen was at a residence in Kalamazoo Township; his truck was running in the driveway. (R.81: PSR, PageID.402, ¶ 15.) Officers discovered over 50 grams of crystal methamphetamine in the truck. (*Id.,* PageID.402-03, ¶ 16.) Law enforcement ultimately recovered a firearm under Mr. Nuyen's truck, additional methamphetamine and another firearm from Mr. Nuyen's home, additional methamphetamine from Mr. Nuyen's girlfriend, and $3,600 from Mr. Nuyen's mother. (*Id.,* PageID.403-04, ¶¶ 18-22.) Mr. Nuyen was interviewed and admitted his girlfriend took some of his drugs, admitted the guns were his, and that everything upstairs in the house (including the methamphetamine) was his. (*Id.,* PageID.404, ¶ 23.)

**3. Charges and Plea Negotiations**

Mr. Nuyen was indicted by a grand jury in March 2019. (R.1: Indictment, PageID.1) In September 2019, Mr. Nuyen participated in a proffer interview with federal and local law enforcement. After the proffer, he was provided with a plea

agreement that allowed him to plead guilty to two counts and provided for a potential downward departure motion. The government noted in its correspondence to Mr. Nuyen's attorney that at the proffer, Mr. Nuyen's "memory was filled with pretty significant holes—not remembering who his sources used to be, for example," and that the other information provided "was very vague—street names or first names only, vague descriptions, no phone numbers, etc." Thus, the government cautioned that such a downward departure motion was unlikely.

Mr. Nuyen rejected the plea offer, proceeded to trial, and was convicted on all counts. (R.70: Jury Verdict, PageID.345-47.)

## Law and Argument

### I. The scoring of Mr. Nuyen's sentencing guidelines in presentence report does not capture all of the relevant conduct.

"A defendant is responsible for all drug quantities that are included within the scope of his 'relevant conduct,' as that term is defined by the United States Sentencing Guidelines Manual." *United States v. Gill,* 348 F.3d 147, 149 (6th Cir. 2003). United States Sentencing Guideline §1B1.3(a)(2) requires a base offense level to be determined based on "all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction." In the Sixth Circuit, "[t]he law . . . is clear that a base offense level is determined by the amount of drugs included in the defendant's relevant conduct, not just amounts in the offense of conviction or charged in the indictment." *United States v. Davern,* 970 F.2d 1490, 1494 (6th Cir. 1992) (en banc) (collecting cases).

A district court may calculate drug quantities attributable to the defendant, if those findings are supported by a preponderance of the evidence. *United States v. Copeland,* 321 F.3d 582, 602 (6th Cir. 2003). The court must "err on the side of caution and only hold the defendant responsible for that quantity of drugs for which the defendant is more likely than not actually responsible." *United States v. Meacham,* 27 F.3d 214, 216 (6th Cir. 1994). If the exact amount of drugs is undetermined, "an estimate will suffice, but . . . a preponderance of the evidence must support the estimate." *United States v. Walton,* 908 F.2d 1289, 1302 (6th Cir. 1990); *United States v. Hernandez,* 227 F.3d 686, 699 (6th Cir. 2000) ("Approximations are completely appropriate.").

Here, according to Mr. Vogel, Mr. Nuyen sold him and his associates about 72 ounces, or over 2 kilograms, in a period of just over a year. (R.81: PSR, PageID.402, ¶ 14.) Mr. Vogel was arrested in December 2018 and a few months later, in February 2019, Mr. Nuyen was arrested and crystal methamphetamine was found in his house, in his truck, and with his girlfriend. Although there was a short lapse after Mr. Vogel's arrest and before Mr. Nuyen's, the circumstantial evidence strongly indicates that Mr. Nuyen continued to traffic in crystal methamphetamine. Per Mr. Vogel's statement, Mr. Nuyen was supplying him and others with about 84 grams of crystal meth each week; at the time of his arrest, about 100 grams of methamphetamine was attributable to Mr. Nuyen (approximately 54 grams in his truck, 27 grams in his house, and 19 grams with his girlfriend). Thus it appears that Mr. Nuyen was continuing to traffic in multiple-gram and/or ounce amounts of

crystal methamphetamine even after Mr. Vogel had been arrested and could no longer purchase from him.

In determining whether something is the same course of conduct, courts look to common victims, common offenders, common purpose, or similar modus operandi. *United States v. Hill,* 79 F.3d 1477, 1483 (6th Cir. 1996). Here, Mr. Nuyen's conduct was dealing similar amounts (ounce amounts) of the same drug (crystal methamphetamine) in the Kalamazoo are from 2017 through early 2019. The government asserts that Mr. Nuyen's drug sales to Mr. Vogel are "part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2). *See United States v. Nichols,* 979 F.2d 402, 413-414 (6th Cir. 1992) (a drug purchase that preceded the offense conduct by three months and included the same conspirators, drug, and objective was relevant conduct); *see also United States v. Miller,* 910 F.2d 1321 (6th Cir. 1990) (affirming the district court's inclusion of 20-months of cocaine sales as relevant conduct, even though defendant was only charged in a conspiracy spanning three of those months). Mr. Vogel's conservative estimate of two kilograms purchased from Mr. Nuyen in the year preceding his arrest (and a few months before Mr. Nuyen's arrest) is attributable as relevant conduct.

The presentence reports notes Mr. Vogel's statement, but it concludes that the "information predated the conduct charged and will not be used for guideline computation purposes." (R.81: PSR, PageID.404, ¶ 24.) This is not a correct application of the law. "We . . . recognize that a lapse of time between prior conduct

and the offense of conviction does not necessarily indicate that a defendant abandoned a particular course of conduct; rather such a lapse may result when participants are forced to put the venture 'on hold.'" *Id.,* citing *United States v. Nunez,* 952 F.3d 196, 198 (7th Cir. 1992) (a relevant conduct finding was not erroneous, even with a two-year lapse between uncharged drug sales and the offense of conviction, because the buyer had been incarcerated). *See also United States v. Wisdom,* 175 F. App'x 702, 706 (6th Cir 2006) (affirming finding of relevant conduct whether there was a pattern of trafficking for four months before the offense of conviction. "In addition to the regularity of this prior drug activity and the short time span between the uncharged conduct and the offense of conviction, this uncharged activity involved the same drug . . . and the same objective . . . as the offense of conviction.").

Furthermore, "[s]eized funds can be converted into an equivalent amount of drugs." *United States v. Russell,* 595 F.3d 633, 646 (6th Cir. 2010). To calculate the conversion, "the government must prove by a preponderance of the evidence both the amount of money attributable to drug activity and the conversion ratio." *Id.* (additional citations omitted). Here, the Court heard recorded jail calls where Mr. Nuyen directed his mother to $3,600 he had hidden in their house. The Court also heard from Special Agent Tom Burns that at that time in Kalamazoo, an ounce of crystal methamphetamine was worth between $250 and $500. Thus, the $3,600

would be the equivalent of somewhere between 201[1] and 403[2] grams of crystal methamphetamine.

Approximately 2.5 kilograms of methamphetamine is attributable to Mr. Nuyen: the 101 grams listed in the PSR, plus the approximately 2 kilograms referenced by Mr. Vogel, and an additional 200-400 grams for the currency conversion. The appropriate base offense level is 36, for at least 1.5kg but less than 5kg of methamphetamine (actual) or "ice." U.S.S.G. § 2D1.1(c)(2). A total offense level of 36 and a criminal history category of II provides an advisory guideline imprisonment range of 210 to 262 months. The fine range would be $40,000 to $10,000,000.

## II. Mr. Nuyen is not entitled to a sentencing reduction pursuant to U.S.S.G. §5K1.1.

Mr. Nuyen has also filed a motion requesting the Court grant a downward departure of his sentencing guidelines for substantial assistance pursuant to U.S.S.G. §5K1.1. (R.78: Def.'s Mot. for Departure, PageID.388.) U.S.S.G. § 5K1.1 grants the government the discretion, but does not impose a duty, to move for a departure when the defendant has rendered substantial assistance. *Wade v. United States,* 504 U.S. 181, 185 (1992).

The government has not filed a motion for such a departure, and "[a] district court generally lacks the authority to grant a downward departure pursuant to this

---

[1] There are 28 grams in an ounce. So assuming a price of $500 per ounce: $\frac{3600}{500} = 7.2$; $7.2 \times 28 = 201.6$

[2] Assuming a price of $250 per ounce: $\frac{3600}{250} = 14.4$; $14.4 \times 28 = 403.2$

section absent a motion by the government." *United States v. Hawkins,* 274 F.3d 420, 427 (6th Cir. 2001) (en banc) citing *United States v. Shrewsberry,* 980 F.2d 1296, 1297 (9th Cir. 1992). In *Hawkins,* the Sixth Circuit recognized that a court can review the government's refusal to move for a downward departure if the refusal is based on an unconstitutional motive (such as the defendant's race) or if the refusal is not rationally related to any legitimate governmental interest. 274 F.3d at 429. In *Hawkins,* the defendant "did absolutely everything required of him under the plea agreement," including testifying at trial, and the government "referred to Hawkins's testimony at length during closing argument." *Id.* at 433-34. The government argued that a departure motion was not filed because his "benefit was in the form of not being charged with a violation of [18 U.S.C.] § 924(c)," but "there was not any evidence that Hawkins violated § 924(c)." *Id.* at 434. The Sixth Circuit held that "the government's reasons for not filing a downward departure motion were not related to any legitimate government end." *Id.*

Here, Mr. Nuyen participated in a proffer interview in September 2019. After the proffer, the government warned Mr. Nuyen's attorney that a downward departure motion was not likely. Mr. Nuyen elected not to enter into the plea agreement and proceeded to trial, which is his right. However, the government's refusal to move for a downward departure is not based on an unconstitutional motive nor is it unrelated to any legitimate end. The government assessed that his proffer did not give information with enough specificity to act on it, nor did Mr. Nuyen provide information that assisted in the investigation or prosecution of

others. The government warned Mr. Nuyen's attorney of its view when discussing the plea offer with him; a downward departure was not filed "due simply to untimeliness." (R.78: Def.'s Motion for Departure, PageID.388.)

Because the government's failure to file such a motion was not based on an unconstitutional motive nor unrelated to any legitimate government end, this Court does not have the authority to review the decision. The government refused to file the motion because Mr. Nuyen did not provide "substantial assistance in the investigation or prosecution of another person." U.S.S.G. § 5K1.1. "Mere allegations that a defendant provided substantial assistance are insufficient to invoke court review." *Hawkins,* 274 F.3d at 426 citing *Wade,* 504 U.S. at 181.

**Conclusion**

For the reasons set forth above, the scoring of the sentencing guidelines should be corrected to reflect all of the relevant conduct attributable to Mr. Nuyen and his motion for a departure under U.S.S.G. § 5K1.1 should be denied.

Respectfully submitted,

ANDREW BYERLY BIRGE
United States Attorney

Dated: February 18, 2020

/s/ *Alexis M. Sanford*
ALEXIS M. SANFORD
Assistant United States Attorney
United States Attorney's Office
P.O. Box 208
Grand Rapids, Michigan 49501
(616) 456-2404
alexis.sanford@usdoj.gov